STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


05-1278


DEVONIA EVANS, ET AL.

VERSUS

CITY OF NATCHITOCHES

**********
APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 69332
HONORABLE DEE HAWTHORNE, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
James T. Genovese, Judges.

**AFFIRMED.**

George A. Flournoy
Flournoy & Doggett
P.O. Box 1270
Alexandria, LA  71309
(318) 487-9858
COUNSEL FOR PLAINTIFFS/APPELLEES:
      Devonia Evans, et al.

Ronald E. Corkern
Corkern & Crews, L.L.C.
P.O. Box 1036
Natchitoches, LA  71458-1036
(318) 352-2302
COUNSEL FOR DEFENDANT/APPELLANT:
      City of Natchitoches

**COOKS, Judge.**

On May 16, 1997, Telethia Evans, who was eleven years old on that date, was walking home from school with her mother, Devonia Evans, when her foot fell into a manhole located on property owned by the City of Natchitoches. Her left leg fell into the partially open manhole and was trapped by the weight of the heavy manhole cover. Telethia sustained a serious injury to her left leg and knee. Suit was filed against the City of Natchitoches, contending its fault led to the injuries sustained by Telethia.

Devonia Evans testified she was walking home with Telethia when two school buses were approaching from opposite directions. They were forced to step off the street and onto the shoulder of the road. Devonia stated she was walking in front of Telethia, and almost immediately after stepping onto the grassy shoulder, she heard Telethia scream. When she turned around she saw Telethia with her leg down in the manhole. When she could not move the heavy cover, she screamed for help. Roy Mitchell, who was working in a nearby yard, came over and was able to lift the manhole cover enough to get Telethia's leg out. Devonia called the power plant and told them her daughter hurt herself falling through a partially open manhole cover. She gave them her name, address, and location of the manhole cover. The next day she went and took pictures of the manhole, which had not been replaced. A few days later she called the City again and talked to a Mr. Williams about the incident and the manhole.

At trial, Roy Mitchell, testified he saw Telethia, her mother, and others walking away from the school on the day in question. He was doing yard work, when he heard Devonia Evans scream. He immediately ran and helped to free Telethia's leg from the manhole cover. He testified Telethia was unable to walk. Mr. Mitchell

stated that approximately one week to two weeks prior to the incident, while sitting on his porch with Bill Williams, he saw two city employees working on the manhole. He also stated he frequently saw city employees bushhogging the area around the manhole, and could hear noises when the mower struck the manhole cover. Plaintiffs presented photographs showing that the manhole cover was marked up and scratched, which Mr. Mitchell believed may have been caused by the bushhogging.

Clyde LaCaze, who was superintendent of the City's water and sewer department at the time of the accident, testified regarding the procedure employed by the City for recording and acting on complaints. He stated complaints were made to the power plant, where either a secretary or the operator at the control room fills out the complaint form. He stated if there had been an accident report filed he would have seen it, but he saw no report about an accident at the manhole in question. Mr. LaCaze further stated there were no reports about any problems or work being done at this particular manhole location. He testified it was not until approximately one year later that he became aware there had been an accident, when he was called by City personnel about the accident.

Brian Wimberly, who served as an assistant operator at the power plant, and at the time of trial was the interim utility director, testified he designed and put into effect the program for cataloging reports that came into the control room. In contrast to Mr. LaCaze's testimony, Mr. Wimberly stated that the secretaries do not fill out forms. He testified all complaints are supposed to be transferred to the control room operator. Mr. Wimberly felt it was highly unlikely that a trouble report would get lost, but acknowledged if the call came in and was put into the wrong category, it would not have been found.

The trial court rendered judgment in favor of plaintiffs finding the City liable

for the injuries sustained by Telethia. The trial court noted the discrepancies in the various witnesses' testimony, and specifically stated it relied on Mr. Mitchell's unbiased and detailed testimony that City workers in the days or weeks prior to the accident worked on the manhole in question. The trial court also found that neither Devonia nor Telethia Evans were at fault in the occurrence of the accident. Devonia acted reasonably in instructing her daughter to walk onto the grassy shoulder of the road to avoid the oncoming buses. Telethia testified she did not see the manhole because she was paying attention to the oncoming buses. The trial court gave the following reasons for its award of damages:

> The Court finds that Telethia Evans sustained a serious and painful injury to her knee and leg when her leg fell in the manhole on May 16, 1997. She was only eleven years old when she was hurt. Telethia was not suffering from any injury prior to the accident, nor was she in any pain prior to the accident. The accident occurred; she sustained an injury and thereafter had serous problems with her knee and leg. She ultimately had to have surgery on her knee on November 14, 2000, over three years after the initial injury. She continues to have problems with her knee swelling and giving way or locking from time to time. The Court viewed her knee and leg and noted that they are disfigured as well. In addition, the early signs of arthritis have already appeared. In November 2000, Dr. Ferrell had to perform surgery on Telethia to repair a torn ACL which he testified was related to the original injury. Dr. Ferrell testified that Telethia has developed early arthritis as a result of her injury, which more likely than not, will get progressively worse. The doctor has found that Telethia has a 20% permanent partial impairment of the knee as a result of her leg injury.
>
> As a result of the injury, Telethia has been in three casts, four or five braces and has had to use crutches for extended periods. Telethia has been dealing with this injury since 1997, from the time she was eleven years old and in the fourth grade. Aside from the significant pain for a youngster (she often classified her pain level at the doctor's office at "10"), she has virtually missed out on the active things that children do when they are growing up. Her medical records indicate warnings against participating in sports activities over extended periods. She has missed out on the opportunity to try things out and to develop interests in physical activities and sports. There were periods during which she has had to stay home.
>
> The injury has affected Telethia both physically and emotionally. At trial she appeared depressed and withdrawn. Her mother testified to her unhappiness in school as a result of other children teasing her and because of her inability to do many things. She began having trouble in

school and fell into problems with other students. In addition to the normal problems of growing up, she was saddled with persistent pain and immobility and was estranged from normal kids. The accident occurred right after she was chosen as cheerleader and destroyed her ambition of being a cheerleader, every little girl's dream. She was unable to join her friends on the trip to Six Flags. She was unable to continue on the dance line. Telethia lost her youth. If she had been an adult when this happened, one might be able to say she could go on to do the things she was missing out on later. However, Telethia cannot go back and be a fifth or sixth grader, or go back and enjoy her junior high or high school. The period in children's lives is when they would be exposed to new experiences, when they would "test the water" and perhaps find out that basketball or soccer or dancing are wonderful and choose to make that a part of their lives. For Telethia, that cannot be replaced. She has now had to face the prognosis of the doctors, that she will have to learn to live with her medical condition, pain, and the concomitant limitations, since, according to the doctor, it will never get any better and will surely get worse. The Court finds that her injuries and pain were caused by the accident, and that her medical treatment was necessitated by the accident.

For the above and foregoing reasons, the Court awards medical expenses to plaintiff in the amount of $24,822.58 and general damages as follows:

(1)    $150,000.00 for past physical and emotional pain, suffering and other losses; and

(2)    $100,000.00 for future pain, suffering and other losses.

The City appealed the trial court's judgment, arguing the trial court "erred in finding that the City was negligent in failing to inspect, repair, warn, or cover the manhole in question; Devonia and/or Telethia Evans were negligent in failing to observe an obvious hazard and avoid it; admissible medical evidence demonstrated that injuries alleged by plaintiff-appellee were unrelated to the accident in question, and the damage award was excessive." Plaintiffs answered the appeal and argue the City's appeal is frivolous and entitles them to damages pursuant to La.Code Civ.P. art. 2164.

## ANALYSIS

Initially, the City contends the trial court manifestly erred in finding it was liable to plaintiff and that Telethia and/or her mother were not guilty of some comparative fault in failing to avoid an obvious hazard. The trial court gave

extensive, well-written reasons for judgment on the issue of liability, which appears

in the record as follows:

> While there were discrepancies in all of the witnesses' testimonies, some of which must surely be due to the extensive passage of time, the Court finds that the only truly unbiased witness who testified at trial was Mr. Mitchell. He testified plausibly and in great detail about the occurrences at issue. His testimony concerning the accident itself is consistent with the testimony of Telethia and her [mother.] The court believes he saw a City sewage maintenance truck at the manhole in question, prior to the accident and that the men failed to properly close the manhole, thus creating a dangerous condition through their negligence.
>
> The report system used by the City, while well planned by Mr. Wimberly was clearly not well followed or implemented, as indicated by the contradictory testimony of Mr. LaCaze. LaCaze's testimony concerning how and when records were kept was inconsistent with that described by Mr. Wimberly, who designed the reporting system. Consequently the existence of records, or not, provides the court with little or no information, and is consequently of no help to the Court in reaching a decision.
>
> However, both men did testify that if a problem is reported, and the workers respond and find no problem, there may be no record. Consequently, it is clearly possible, and more likely than not, that a sewage complaint was made (prior to the accident), the City responded, the men opened the manhole and went down to do work, found nothing "to fix," therefore "did no work" and consequently there was no report.
>
> There is no evidence that anybody other than City employees opened that manhole. Mr. Mitchell, who worked in the garden next to the manhole daily, did not see anyone else opening the manhole. Mr. Wimberly's testimony in this regard, was mere speculation and the information must not have been significant to him or others as it appears to have never even been mentioned during the eight-year period that this matter has been pending.
>
> The Court finds the City liable for the injuries sustained by Telethia Evans. The Court finds further that Devonia Evans acted reasonably when she stepped onto the grassy shoulder of the road to avoid the school buses and instructed her daughter to do so as well. In addition, Devonia may well have already passed the manhole when she and Telethia left the roadway (Devonia was ahead of Telethia), and may not have even been in a position to be able to see the manhole at all. Devonia acted as a responsible parent, seeing to the safety of her child. She should have been able to rely on the safety of the grassy shoulder of the road. Therefore, the Court finds no negligence on the part of Devonia Evans.

Factual findings of the trial court will not be disturbed in the absence of

manifest error. An appellate court's reversal of a trial court's factual finding

-5-

necessitates a determination that the record does not support the existence of a reasonable factual basis for the finding, such that it is clearly wrong. *Stobart v. State, Through Department of Transportation and Development*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Our review of the record finds a reasonable factual basis existed for the trial court's liability determinations, and, as such, it cannot be manifestly erroneous.

The City also contended the injuries suffered by Telethia were unrelated to her fall into the manhole. Specifically, the City argues Telethia's Osgood-Slaters Disease was unrelated to the fall. We disagree. The trial court noted both Dr. Rambach and Dr. Ferrell were of the opinion that the Osgood-Slaters Disease was related to Telethia's trauma/injury, and became symptomatic due to the fall. This was a reasonable interpretation of the medical evidence by the trial court, and we will not disturb it on review.

The City also argued certain medical records generated by Dr. Rambach's office were improperly excluded at trial. The excluded evidence consisted of notations made by a nurse that questioned whether the Osgood-Slater's Disease was related to the fall. Although stating nurse's notes which record treatment or care given by the nurse would ordinarily be a part of the medical record for purposes of La.R.S. 13:3714, the trial court found the notes in question did not concern treatment the nurse had given the patient and, therefore, were not medical records for purposes of R.S. 13:3714. The trial court also stated:

> In addition the reliability of the statement(s) or questioned document(s), (in this case, pages 111 and 199) is seriously called into question by other trial testimony and evidence. Other evidence and testimony contradict the notations found on pages 111 and 199. Both doctors appear to have been of the opinion that the Osgood-Slaters Disease was related to the child's injury/trauma. Consequently, the weight given to the questioned documents, should they be admitted, would be extraordinarily low.

Considering the above, in the present case, the probative value of the questioned documents is substantially outweighed by the danger of unfair prejudice, consequently, the questioned documents should not be admitted.

We do not find the trial court abused its discretion in determining the probative value of the nurse's notations was outweighed by the danger of unfair prejudice. Further, we find the trial court decided the case based on the medical evidence *in toto*, and the record supports her conclusion that the trauma suffered by Telethia caused her injuries.

Lastly, the City argues the damages awarded by the trial court were excessive. The trial court offered extensive reasons for its awards, which were set forth above. Prior to the accident, Telethia was not suffering from any pain or injury. As a result of the accident, she eventually had surgery to repair a torn ACL. Telethia suffers from early arthritis, which the doctors believed would only get progressively worse. She has a twenty percent permanent, partial impairment of the knee, which is also disfigured. The trial court voiced great concern over the devastating effects Telethia's injuries had on her childhood, and concluded that because of the injuries she suffered "Telethia lost her youth." We find no abuse of discretion in the trial court's damage awards.

The plaintiffs argue they are entitled to damages for a frivolous appeal under La.Code Civ.P. art. 2164. Damages for a frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, that serious legal questions are not raised, or that the attorney does not seriously believe in the position he advocates. *Robinson v. Thornton*, 96-1329 (La.App. 3 Cir. 10/29/97), 705 So.2d 745, *writ denied*, 97-2963 (La. 2/6/98), 709 So.2d 739. We do not find the City's appeal was taken solely for the purpose of delay or that counsel did not seriously believe in the position advocated. Therefore, we deny damages for frivolous appeal.

**DECREE**

For the foregoing reasons, the trial court's judgment is affirmed. All costs of this appeal are assessed to the City of Natchitoches.

**AFFIRMED.**